IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-cr-361-RAH-SMD |
| | ) | |
| TONY L. JULIUS | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.   BACKGROUND

Tony L. Julius ("Julius") is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Indictment (Doc. 1). Evidence supporting this charge was discovered when officers searched Julius's vehicle during a traffic stop. Julius moves to suppress the evidence seized and the statements made during that stop, arguing that (1) the initial traffic stop was without probable cause or, alternatively, the stop was pretextual; and (2) the search of the vehicle was illegal because officers lacked reasonable suspicion to search, the driver did not consent to the search, and the scent of marijuana was manufactured by officers in order to establish probable cause. Mot. (Doc. 19) pp. 3-11.

On December 9, 2021, the undersigned held a suppression hearing in the matter. Transcript (Doc. 30). Upon consideration of Julius's Motion (Doc. 19), the Government's Response (Doc. 23), and the evidence and arguments presented at the hearing, the undersigned RECOMMENDS that Julius's Motion to Suppress (Doc. 19) be denied.

## II.     FINDINGS OF FACT[1]

On January 25, 2021, a Special Agent with the Drug Enforcement Agency asked Montgomery Police Department Officer Boddie to follow a vehicle traveling near the Montgomery County line and to develop probable cause to conduct a traffic stop on the vehicle. Transcript (Doc. 30) p. 5, 12-13. After following the vehicle for a couple miles, Officer Boddie observed the driver enter a turn lane without properly signaling. *Id.* at 6-7, 13, 31. Officer Boddie initiated his lights and the vehicle pulled over inside a shopping center parking lot. *Id.* at 7. Officer Boddie approached the vehicle and identified the driver as Juanetta Moore. *Id.* at 7-8, 17-18, 30-31. Julius, the registered owner of the vehicle, was in the passenger seat. *Id.* at 6, 9, 19. Officer Boddie informed Moore that he pulled the vehicle over for her failure to properly use her turn signal. *Id.* at 6-8, 31. During that interaction, Officer Boddie smelled what he believed was burnt marijuana coming from the vehicle. *Id.* at 8, 14. He asked Moore to accompany him to the back of the car. *Id.* at 8.

Another officer on the scene asked Moore if he could search the vehicle. *Id.* at 18, 32. She declined. *Id.* Julius, however, consented. *Id.* at 9-10, 18-19. Police searched the vehicle and found a handgun in the glove compartment, along with a large sum of money. *Id*. at 10. They also found sandwich bags in the trunk but discovered no marijuana in the vehicle. *Id*. Julius, a convicted felon, was taken into custody. *Id*.

---

[1] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

## III.   LEGAL STANDARD

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. When a defendant moves "to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (emphasis in original). To sustain this burden, the "Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment." *Id.*

## IV.   DISCUSSION

### A.   The Traffic Stop

Julius argues that the initial traffic stop violated his Fourth Amendment rights because it was conducted without probable cause. Mot. (Doc. 19) pp. 3-6. Alternatively, Julius argues that, if there was probable cause to conduct the traffic stop, the stop was pretextual and the probable cause was based on an unreliable source and/or unreliable information. *Id.* at 6-8. For the reasons explained below, Julius's arguments are without merit.

#### 1.   Officer Boddie had probable cause to conduct a traffic stop.

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). "[T]he decision to stop an automobile is reasonable where the police

have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Under Alabama law, drivers can turn only after "giving an appropriate signal." ALA. CODE § 32-5A-133(a). This signal must be given at least 100 feet before turning. *Id.* at § 32-5A-133(b). Failure to properly use a turn signal, then, provides probable cause to justify a traffic stop. *United States v. Blackmon*, 536 F. App'x 944, 946 (11th Cir. 2013).

Here, it is undisputed that Moore failed to properly signal,[2] and that Officer Boddie observed that traffic infraction. Because failure to properly signal violates Alabama traffic law, Officer Boddie had probable cause to stop the vehicle. As such, Julius's constitutional rights were not violated by the initial stop.

### 2.   Whether the stop was pretextual is irrelevant under the law.

In *Whren v. United States*, 517 U.S. 806 (1996), the United States Supreme Court held that the motivation of an officer making a traffic stop is irrelevant. Under this binding precedent, then, Officer Boddie's subjective reasons for stopping Julius's vehicle—even if they were pretextual—were irrelevant so long as Officer Boddie had probable cause to support the articulated traffic violation. *United States v. Wilson*, 979 F.3d 889, 909-10 (11th Cir. 2020); *see also United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019) ("'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis'; the constitutional reasonableness of traffic stops' does not 'depend on the actual

---

[2] During the suppression hearing, Moore did not dispute Officer Boddie's reason for pulling her over, nor did she contend that she properly used her signal.

motivations of the individual officers involved.'") (quoting *Whren*, 517 U.S. at 813). The undersigned credits Officer Boddie's undisputed testimony that he observed Moore fail to properly signal before entering a turn lane. Because Officer Boddie witnessed Moore commit a traffic violation, he had probable cause to initiate a traffic stop regardless of the information he received prior to making the stop. As such, whether the prior information he received was unreliable—or whether it was provided by an unreliable source—is irrelevant.

      **B.**    **Search of the Vehicle**

      Julius argues that the search of the vehicle was illegal because (1) officers lacked reasonable suspicion to conduct the search; (2) Moore, who was driving the vehicle, did not give consent; and (3) officers manufactured the scent of marijuana to establish probable cause. Mot. (Doc. 19) pp. 8-12. Because it is clear that Julius, the owner of the vehicle, voluntarily consented to the search, the search was valid.

      A search is reasonable and does not require a warrant if an officer obtains voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). Officers conducting routine traffic stops may request consent to search. *Purcell*, 236 F.3d at 1280. The Government has the burden of proving that consent to search was given voluntarily, as an independent act of free will, and not as mere acquiescence to an officer's claim of lawful authority to search. *Florida v. Royer*, 460 U.S. 491, 496 (1983). To be considered voluntary, consent "must be the product of an essentially free and unconstrained choice." *Garcia*, 890 F.2d at 360.

Whether consent was voluntary is a question of fact to be determined by the totality of the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Purcell*, 236 F.3d at 1281. The Eleventh Circuit instructs that, when evaluating consent given during a traffic stop, the court should look at several factors "including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *Purcell*, 236 F.3d at 1281. The decision to consent is voluntary when an officer does not use imperatives and instead makes requests that the defendant is free to deny. *United States v. Batson*, 749 F. App'x 804, 806 (11th Cir. Sept. 11, 2018).

Officer Boddie's body camera video, which was admitted into evidence, captures Julius's consent to search the vehicle. Julius Ex. 3 at 3:18-4:44. With Julius and Moore standing side-by-side at the back of the vehicle, Officer Boddie tells them that the vehicle smells like marijuana. *Id.* Julius then states that there is no marijuana in the vehicle, and Officer Boddie responds: "So if I search it, I ain't gonna find nothing, right?" *Id.* Julius again states that there is no marijuana in the vehicle. *Id.* Officer Boddie asks Julius if he minds if they search the vehicle and Julius responds "[w]e ain't did nothing." *Id.* Officer Boddie reiterates that the vehicle smells like marijuana and Julius states that there "ain't no weed." *Id.* As Officer Boddie puts on gloves in preparation to search the vehicle, another officer is captured asking Moore and Julius if they mind if officers search vehicle "since there's nothing in there." *Id.* Moore tells the officer that she does mind if the vehicle is

6

searched. *Id.* The officer informs Moore and Julius that, "since we smell marijuana, that's the probable cause we need to search it, just trying to see how cooperative y'all are going to be." *Id.* He continues: "So now I realize you're not going to be cooperative, so, we still have a legal reason [to search the vehicle]." *Id.* Moore then indicates that the vehicle is not hers, so the officer turns to Julius and asks him if he minds if they search. *Id.* Julius states: "I don't mind."

Here, the totality of the circumstances establishes that Julius's consent was voluntary. As shown on Officer Boddie's body camera video, Julius told officers that he did not mind if they searched his vehicle. Julius's Ex. 3 at 4:41. When he gave this consent, Julius was not in handcuffs, nor was he arrested. He and Moore had been stopped for a relatively short period of time, and the environment in which he gave consent was not oppressive. *See United States v. Espinosa-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983) (holding environment not unduly coercive where individual was arrested at gunpoint, was forced to lie on the ground near the roadway, and gave consent while officer still had gun drawn); *see also Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984) (holding that public highway setting is generally less coercive than police station). There is no evidence that officers threatened, intimidated, used physical force, or utilized psychological tactics to gain Julius's consent.[3] *United States v. Jones*, 475 F.2d 723, 730 (5th Cir. 1973) ("[T]he

---

[3] The undersigned notes that, after Julius and Moore had stepped to the back of the vehicle, officers informed them that they smelled marijuana in the vehicle and that the smell gave them probable cause to search. Julius's Ex. 3 at 3:50. One officer stated that they did not need consent because they smelled marijuana, but they were seeking consent to see how cooperative they would be. *Id.* Informing an individual that an innocent person would cooperate with police could, under certain circumstances, be considered a

absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent."). Indeed, under the same circumstances, Moore denied officers' requests to the search.[4] Further, prior to giving his consent, Julius stated multiple times that there was no marijuana in the vehicle and that he and Moore were doing nothing wrong. These statements weigh in favor of finding Julius's consent voluntary. *See United States v. Hall*, 565 F.2d 917, 920 (5th Cir. 1978) (noting that the suspect's statement when he gave consent that no incriminating evidence would be found was "a factor pointing to the validity of his consent"). Thus, under the totality of the circumstances, the undersigned finds that Julius's consent was voluntary because it was "the product of an essentially free and unconstrained choice." *See Garcia*, 890 F.2d at 360; *see also United States v. Jennings*, 491 F. Supp. 2d 1072, 1080 (M.D. Ala. 2007) (applying Eleventh Circuit precedent and finding no basis to conclude a consent to search involuntary "absent any evidence of psychological or physical coercion on the part of the agents").

---

coercive tactic to gain consent to search. *United States v. Berry*, 670 F.2d 583, 597 (5th Cir. 1982). However, under these circumstances, the undersigned does not find officers' tactics sufficiently coercive to overcome Julius's voluntary consent. *See, e.g.*, *Garcia*, 890 F.2d at 361 (holding consent was voluntary despite officers' statements that they would not accept suspect's conditional consent to search and, if he refused to consent to full search, officers would attempt to obtain search warrant); *United States v. Long*, 866 F.2d 402, 404 (11th Cir. 1989) (holding consent was voluntary where officers asked suspect to consent to search for evidence in his yard and stated that if he refused they would return and "dig the place up").

[4] After Moore denied consent to search, an officer stated that, because they smelled marijuana, they had probable cause to search the vehicle and they were simply trying to see how cooperative Moore and Julius would be. Julius's Ex. 3 at 4:15. This is the only additional statement made prior to Julius's consent that distinguishes the circumstances under which Moore denied consent and Julius gave consent.

Notably, Julius does not contest that his consent was voluntary. Instead, he argues that the search was illegal because Moore, the driver of the vehicle, denied consent. Mot. (Doc. 19) p. 10. However, as the vehicle's owner, Julius had the authority to consent to its search, and his status as a mere passenger in the vehicle at the time it was stopped did not undermine that authority. *See United States v. Dunkey*, 911 F.2d 522, 525-26 (11th Cir. 1990) (holding that both lessee/passenger and driver have authority to consent to search of automobile). Thus, because Julius had the authority to consent to the search of his vehicle, and because that consent was voluntary, the search of Julius's vehicle did not violate his constitutional rights.

## V.  CONCLUSION

For the reasons stated above, it is the

RECOMMENDATION of the undersigned United States Magistrate Judge that Julius's Motion to Suppress (Doc. 19) be DENIED.  It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before March 18, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 4th day of March, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE